AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>THE CELLULAR TELEPHONE<br>ASSIGNED CALL NUMBER<br>216-727-6915 (T-Mobile) | )<br>)<br>)  Case No. 1:17MJ -76<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

A CELLULAR TELEPHONE ASSIGNED CALL NUMBER 216-727-6915 (T-Mobile)

located in the _____Southern_____ District of _____Ohio_____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENTS A AND B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 | Possession of a Controlled Substance with the Intent to Distribute |
| 18 U.S.C. 922(g)(1) | Possession of a Firearm by a Convicted Felon |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.
☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Christopher Nieves, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/27/2017

_____
Judge's signature

City and state: Cincinnati, Ohio

Hon. Karen L. Litkovitz, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 216-727-6915 (T-Mobile) | CASE NO. 1:17MJ-76 UNDER SEAL |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Christopher Nieves, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **216-727-6915(Subject Telephone)**, whose service provider is T-Mobile US, Inc., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054. The targeted cell phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I, am a Special Agent of the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives and have been so employed since May 16, 2015 and am currently assigned to the Cincinnati I Group Cincinnati, OH. During this time, your affiant has been trained in the investigative techniques and enforcement of federal firearms and explosives laws and is a graduate from the Federal Law Enforcement Training Center (FLETC) Criminal Investigator Training Program as well as ATF Special Agent Basic Training (SABT). In addition, I am a graduate of the Indianapolis Metropolitan Police Department's (IMPD) Training Academy and was employed as a law enforcement officer with the IMPD from October 2007 until May 2015. During your affiant's time as a law enforcement officer your affiant received training and participated in criminal

investigations to include but not limited to investigations relating to illegal possession of firearms, illegal purchases of firearms, illegal sales of firearms, illegal trafficking of firearms, illegal possession of controlled substances and illegal sales of narcotics.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 United States Code, Section 841(a)(1) and 18 United States Code, Section 922(g)(1) have been committed, are being committed, and will be committed by Erik McCOY and other as-yet unknown individuals. There is also probable cause to believe that the location of the **Subject Telephone** will constitute evidence of those criminal violations, and will lead to the arrest of MCCOY.

## THE RELEVANT FACTS

5. On or about October 14, 2016, Cincinnati Police Department (CPD) District 3 (D3) Violent Crime Squad (VCS) Detective (Det.) Mark Longworth received information from a confidential Source of Information (SOI) regarding Erik MCCOY and Derrick HEARD. The SOI provided details about MCCOY and HEARD's drug trafficking operation and stated that both MCCOY and HEARD live at 10515 Hadley Road, Cincinnati, OH. The SOI also stated he/she knows MCCOY to keep drugs and guns at this location and has also seen unidentified Mexican men at this location whom he/she knows to be MCCOY and HEARD's narcotics supplier. The SOI also stated that he/she knows MCCOY and HEARD to sell marijuana out of MVP Barber and MVP Athletic Gear located at 4303 Glenway Ave, Cincinnati, OH.

6. On October 14, 2016, Derrick HEARD was observed at MVP Barber Shop located at 4303 Glenway Ave, Cincinnati, OH. HEARD was seen driving a black Honda bearing Ohio plate GFS6526.

7. On October 14, 2016, at approximately 5:30 PM CPD Det. Mark Longworth along with CPD D3 uniformed officers observed HEARD leaving in the black Honda and performed a traffic stop after witnessing HEARD commit a traffic infraction. During the execution of the traffic stop Det. Longworth observed in plain view a baggie containing a quantity of marijuana visible in HEARD's pants pockets. The marijuana was retained for evidence and weighed 121 grams. HEARD was subsequently arrested for possession of marijuana and transported to D3 Headquarters for further questioning. HEARD was also in possession of $1,205 in U.S. currency.

8. On October 14, 2016, a state issued search warrant was executed at MVP Barber and MVP Athletic Gear located at 4403 Glenway Ave, Cincinnati, OH. Multiple items were discovered during the search warrant to include but not limited to: multiple scales, a 9mm handgun, ammunition, boxes of baggies, and an empty gun box containing a test-fire cartridge.

9. On October 14, 2016, Det. Longworth applied for a second state search warrant for 10515 Hadley Road, Cincinnati, OH. This location was believed to be the residence of Erik MCCOY and Derrick HEARD. One of HEARD's vehicles, a Gold 2007 Chevy Tahoe bearing Ohio plate FXB4894 was seen parked outside in the driveway of this residence.

10. On October 14, 2016, at approximately 10:30 PM SA Nieves and Graham assisted Det. Longworth and CPD D3 Officers with the execution of a state issued search warrant at 10515 Hadley Road, Cincinnati, Ohio.

11. While inside the residence ATF Agents and CPD Officers observed three bedrooms on the second floor. Bedroom one was at the end of the hallway to the left and contained documents bearing Erik MCCOY's name to include but not limited to: receipts, state forms concerning M&L

3

Property Management LLC, vehicle insurance cards, mail addressed to MCCOY, storage receipts, vehicle registrations, and framed family photos containing MCCOY.

12. Bedroom one, hereinafter, MCCOY's bedroom, also contained a large quantity of money totaling $37,840.00 dollars. A Walther manufactured, model PPQ, 9mm pistol bearing serial number FAJ9129 was located near the bed in a chest that appeared to be used as a night stand.

13. On October 14, 2016 a further search of the residence led to the discovery of several items in the kitchen that, from your affiants training and experience, are used for the preparation and packaging of heroin for distribution. Those items include: a DS 10 electronic scale, numerous boxes of sandwich baggies, latex gloves, a dust mask, cling wrap, a blender blade, vitamin D powder, and Benzocaine which your affiant knows form training and experience as items to be used as cutting agents. Cutting agents are products used to dilute narcotics for distribution.

14. On October 14, 2016 Agents and CPD Officers also searched the attached garage and all vehicles located on the curtilage of the property. Officers located a 2009 Nissan Maxima bearing Ohio plate GCA8855 registered to Renae HEARD inside the garage. A search of the trunk of the Nissan led to the discovery of approximately 44,000 grams of suspected marijuana and documents relating to the 2009 Nissan bearing Derrick HEARD's name. The documents discovered include but are not limited to: vehicle insurance cards, repair invoices, and utility bills.

15. A 2007 Chevy Tahoe bearing Ohio plate FAJ9129 registered to Derrick HEARD. was located in the driveway at 10515 Hadley Road. ATF SA Derek Graham searched this vehicle and discovered a plastic bag filled with over four (4) pounds of suspected heroin.

16. On October 15, 2016 at approximately 12:56 AM, ATF SA Nieves and Det. Longworth interviewed Derrick HEARD. HEARD was advised of his rights which he waived by

4

signing ATF Advice of Rights and Waiver form 3200.4. The interview was also video recorded and entered into ATF property as evidence.

17. During the interview HEARD told investigators that he doesn't actually live at the location at 10515 Hadley Road but keeps his property there, to include the Nissan Maxima and Chevy Tahoe. HEARD also told investigators that Erik MCCOY does live at the location with his daughter Erika and another male named Antonio Nelson. HEARD further explained that the owner of the property is named Lashawn WILLIAMS.

18. Documents relating to WILLIAMS were discovered inside the property and included various storage receipts and utility bills.

19. Investigators questioned HEARD about the marijuana found in vehicles located at 10515 Hadley Road. HEARD admitted to owning the marijuana located in the back of the Nissan Maxima and states he gets the marijuana delivered on a regular basis but was not specific as to frequency of the deliveries.

20. HEARD also stated that the heroin in the Chevy Tahoe belongs to Erik MCCOY and that MCCOY receives the heroin a couple times a month. HEARD stated that he has, in the past, helped MCCOY prepare the packaged heroin for distribution. HEARD also stated that MCCOY pays him for preparing and packaging the heroin. HEARD further stated that the heroin in the Chevy Tahoe was what remained from approximately eight (8) pounds of heroin.

21. HEARD also stated that the heroin and marijuana supply sources are "Mexicans" that live locally. This information was also supported by information provided by the CPD SOI who stated that he/she has seen "Mexicans" at this location talking to MCCOY.

22. On October 17, 2016, the CPD SOI was interviewed and voluntarily provided information about the Walther manufactured firearm. The information was given without being

5

prompted. The SOI had asked if officers discovered the black pistol in the night stand near the bed and further stated that the firearm was MCCOY's and that he sleeps with it every night.

23. The affiant has received copies of MCCOY's criminal history which shows MCCOY to be convicted of crimes punishable by imprisonment for a term exceeding one year. Those convictions include a 2000 felony level 2 conviction for burglary, a violation of ORC 2911.12(A)(2), in case number B99099052 and a 2005 level 2 conviction for possession of marijuana, a violation of ORC 2925.11(A), in case number B0412258-C. Based on the above facts and circumstances, your affiant believes that Erik MCCOY did unlawfully possess a firearm while having been convicted of crimes punishable by imprisonment exceeding one year in violation of Title 18 United States Code § 922(g)(1).

24. Further, based on the above facts and circumstances, your affiant believes that Erik MCOY and Derrick HEARD did unlawfully possess, with the intent to distribute, a quantity of heroin exceeding one kilogram in violation of Title 21 United States Code § 841(a)(1). MCCOY and HEARD also did unlawfully possess, with the intent to distribute, a quantity of marijuana exceeding one-hundred (100) pounds in violation of Title 21 United States Code § 841(a)(1).

25. On January 23, 2017, United States Magistrate Judge, Stephanie K. Bowman, signed a complaint and arrest warrant for Erik MCCOY charging him with possession with intent to distribute a quantity of heroin in violation or 21 U.S.C. § 841(a)(1) and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

26. January 24, 2017, Sergeant Vogelpohl of the Cincinnati Police Department, made contact with Antionette Tisdale, Erik MCCOY's sister, at 2561 Chopin Drive, Cincinnati, Ohio. Ms. Tisdale contacted Erik MCCOY at **216-727-6915 (Subject Telephone)** and then put Sergeant Vogelpohl on the phone with him. MCCOY stated "he was out of town."

27. Based on the aforementioned facts and reporting, Agents believe that Erik McCOY is using the **Subject Telephone** to commit federal narcotics and firearm offenses and that the information requested will assist the ATF in identifying MCCOY's location.

28. In my training and experience, I have learned that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

29. Based on my training and experience, I know that wireless phone companies can collect E-911 Phase II data about the location of the target cell phone, including by initiating a signal to determine the location of the target cell phone on T-Mobile US, Inc.'s network or with such other reference points as may be reasonably available.

30. Based on my training and experience, I know that wireless phone companies can also collect cell-site data about the target cell phone.

## AUTHORIZATION REQUEST

31. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

32. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

33. I further request that the Court direct the T-Mobile US, Inc. to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile US, Inc. I also request that the Court direct T-Mobile US, Inc. to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile US, Inc. services, including by initiating a signal to determine the location of the target cell phone on T-Mobile US, Inc. network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The

government shall reasonably compensate T-Mobile US, Inc. for reasonable expenses incurred in furnishing such facilities or assistance.

34. I further request that the Court authorize the government to install and operate a cell-site simulator to obtain dialing, routing, addressing, and signaling information from the target cell phone to determine the location of the target cell phone.

35. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the target cell phone outside of daytime hours. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is probable cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Christopher Nieves
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn to before me on this 27 day of January, 2017.

HONORABLE KAREN L. LITKOVITZ
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **216-727-6915**, whose wireless service provider is T-Mobile US, Inc., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2. Information about the location of the cellular telephone assigned call number **216-727-6915** that is within the possession, custody, or control of T-Mobile US, Inc. including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the target cell phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the target cell phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile US, Inc., T-Mobile US, Inc. is required to disclose the Location Information to the government. In addition, T-Mobile US, Inc. must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile US, Inc. services, including by initiating a signal to determine the location of the target cell phone on T-Mobile US, Inc.'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile US, Inc. for reasonable expenses incurred in furnishing such facilities or assistance. In addition the government may initiate a signal to determine the location of the target cell phone.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).